**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | Case No. 10-20102 |
| USA DRY VAN LOGISTICS, LLC, *et al.*,[1] | § | (Chapter 11) |
| | § | |
| DEBTOR | § | Jointly Administered |
| | § | |

**DEBTORS' EMERGENCY MOTION TO (I) AUTHORIZE SECURED AND
SUPERPRIORITY POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 363, 364
AND 507(b), (II) GRANT OTHER RELATED RELIEF AND (III) SCHEDULE
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 15 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED ON AN FINAL BASIS. IF YOU DO NOT FILE A TIMELY RESPONSE, FINAL RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE FINAL HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR COUNSEL.

THERE WILL BE A HEARING ON THIS MOTION ON FEBRUARY 3, 2010 AT 10:00 A.M. AT 1133 NORTH SHORELINE DRIVE, SECOND FLOOR, CORPUS CHRISTI, TEXAS 78401.

---

[1] Golagale Holdings, L.L.C.; USA Logistics Carriers, L.L.C.; USA Log. Carriers, L.L.C.; USA Dry Van Logistics, L.L.C.; North American Trailer Rentals, L.L.C.; South Texas Petroleum, L.L.C.; and LA & G Investment Co, L.L.C..  The corporate address for all debtors is 3010 West military, McAllen, Texas 78503.  Joint administration under the above style and case number has been ordered by the United States Bankruptcy Court on February 3, 2010. The use of the term "Debtor" shall refer to all debtors

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

U.S.A. Logistics Carriers, LLC, USA Log. Carriers, LLC and USA Dry Van Logistics, LLC, as debtors and debtors in possession (collectively, the "Debtors" or the "Borrowers") in the above-referenced chapter 11 cases (the "Cases"), respectfully move the Court herein (the "Motion") to (i) authorize secured and superpriority postpetition financing pursuant to sections 363, 364 and 507(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), (ii) grant other related relief and (iii) schedule a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in support respectfully states as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has core jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

2.      The relief requested herein is authorized under sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Rules.

3.      Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     BACKGROUND

4.      On February 1, 2010 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

5.      The Debtors continues to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.  No statutory

committee of unsecured creditors (to the extent such committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Cases.

6.     The Debtors collectively operate a very large trucking and related operation in McAllen, Texas with another facility in Laredo, Texas. Much of the business of the companies involves cross-border transportation of goods too and from the United States and Mexico.

7.     For a variety of reasons, some of which are more fully discussed below, the Debtor's combined cash flows are now insufficient to sustain operations, causing the Debtors to seek relief under the Chapter 11 of Title 11.

8.     The Debtors have arranged for Debtor-in-Possession Financing in order to continue in business.

## III.     THE DEBTORS REQUIRE DIP FINANCING

### A.     THE DEBTORS' PREPETITION LOAN DOCUMENTS

9.     Pursuant to that certain Transportation Accounts Financing and Security Agreement dated as of May 8, 2003 (as amended or otherwise modified from time to time, the "Prepetition Discretionary Financing Agreement"), originally between Citicapital Commercial Corporation, as lender, and U.S.A. Logistics Carriers, LLC, as borrower, and, as amended, among General Electric Capital Corporation, as lender (the "Prepetition Secured Lender") and the Debtors, as borrowers, the Prepetition Secured Lender agreed to extend demand loans, on a solely discretionary basis, to the Borrowers (the "Prepetition Secured Credit Facility").  The Prepetition Discretionary Financing Agreement, along with any other agreements and documents executed or delivered in connection therewith, are collectively referred to herein as the "Prepetition Loan Documents."  All obligations of the Debtors arising under the Prepetition Discretionary Financing Agreement (including, without limitation, the "Obligations" as defined

therein) or any other Prepetition Loan Document shall collectively be referred to herein as the "Prepetition Obligations."[2]

10.     Pursuant to the Pre-petition Discretionary Financing Agreement, each Borrower granted to the Pre-petition Secured Lender, to secure the Pre-petition Obligations, a security interest in and continuing lien (the "Prepetition Liens") on substantially all of such Debtor's assets and property and all proceeds, products, assessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All collateral gained or pledged by such Debtors pursuant to any Prepetition Loan Document, including, without limitation, the "Collateral" as defined in the Prepetition Discretionary Financing Agreement, and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "Prepetition Collateral".

11.     As of the Petition Date, the Debtors believe that (I) the Prepetition Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Secured Lender for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate in all respects only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) valid, perfected and unavoidable liens permitted under the applicable Prepetition Loan Documents, but only to the extent that such liens are permitted by the applicable Prepetition Loan Documents to be senior to or *pari passu* with the applicable Prepetition Liens, and (II) (x) the Prepetition Obligation constitute legal, valid and binding

---

[2]     In addition to the Prepetition Obligations under the Prepetition Loan Documents, GECC and/or affiliates thereof may also have additional financing arrangements or secured financing arrangements with the Debtors, and the rights of GECC and/or its affiliates (including the right to adequate protection) with respect to such additional financing arrangements and secured financing arrangements are not addressed by this Motion.

obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Obligations exist, (z) no portion of the Prepetition Obligation or any payments made to the Prepetition Secured Lender is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defenses, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

12.     On January 25, 2010, representatives of the Debtors informed the Prepetition Secured Lender of a substantial overstatement in Accounts and Eligible Accounts that had been previously reported to the Prepetition Secured Lender and against which the Prepetition Secured Lender had advanced loans, resulting in an significance overadvance under the Prepetition Loan Documents. As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Secured Lender pursuant to the Prepetition Loan Documetns, without defense, counterclaim or offset of any kind, in respect of loans made by the Prepetition Secured Lender in the aggregate principal amount of not less than $28,773,140; plus all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that the chargeable or reimburseable under the Prepetition Loan Documents) now or hereafter due under the Prepetition Loan Documents.

**B.    THE DEBTORS' URGENT NEED FOR POSTPETITION FINANCING**

13.     The Debtors urgently require the use of the funds to be realized from the execution and consummation of the proposed postpetition financing facility with GECC described below in order to pay their vendors and employees, to purchase inventory and supplies,

to make certain required capital expenditures and to continue the operation of their businesses without interruption. Without immediate access to cash collateral and the postpetition financing at this critical time, the Debtors will be unable to continue to conduct their businesses in a normal fashion. The Debtors seek authorization to use the proceeds of the postpetition financing facility to fund the payment of operating expenses incurred on and after the Petition Date, including costs relating to, inter alia, the purchase of inventory and supplies, certain required capital expenditures, the payment of rent, taxes, utilities, salaries and wages, and employee benefits.

14.     The Debtors also require the postpetition financing to pay such prepetition operating expenses as may be approved by the Court pursuant to the "first day" motions filed herewith, including, inter alia, (a) payments to vendors for goods ordered, but not yet received, which are necessary to ensure an uninterrupted supply of inventory and supplies and (b) payment of prepetition wages, salaries, and employee benefits, including prepetition workers' compensation claims and other benefits necessary to assure the continued services of the employees during the pendency of this case. As set forth in the underlying motions requesting such relief, the Debtors believe that it is critical to its ability to stabilize, maintain and operate their businesses on an ongoing basis that they obtain the authorization to make such payments. Absent use of the postpetition financing facility for these purposes, the Debtors' vendor, employee and customer base will be jeopardized and their efforts to maximize its value for the estates will be undermined.

15.     Additionally, the Debtors require the postpetition financing facility in order to assure its employees and trade creditors that they possess the liquidity to continue making timely payments in the ordinary course of business. The availability of sufficient credit under the

postpetition financing facility is needed to provide the Debtors' trade creditors and employees with the necessary confidence to continue their respective credit relationships and employment with the Debtors postpetition.

16.     The Debtors do not have sufficient cash on hand to meet their immediate operating needs. The inability of the Debtors to obtain the financing necessary to conduct their businesses on an uninterrupted basis will have a profoundly adverse impact on the value of the Debtors' businesses, and the subsequent value to be realized therefrom by their creditors in theses Cases.

## C. THE TERMS OF THE PROPOSED DIP FACILITY

17.     The Debtors have determined, in the exercise of their sound business judgment, that they should obtain senior secured postpetition financing (the "DIP Loans," and such credit facility, the "DIP Facility") in the form of a discretionary revolving credit facility pursuant to the terms of (y) the proposed Interim Order in the form filed herein (the "Interim Order"), and (z) that certain Senior Secured Super-Priority Debtor-In-Possession Transportation Accounts Financing Agreement, dated as of May 8, 2003 (as the same may be amended, restated, supplemented or otherwise modified from time to time styled "Assumption Agreemetn and Amendment to Loan Documents", hereinafter the "DIP Financing Agreement"),[3] by and among the Borrowers and General Electric Capital Corporation ("GECC," or the "DIP Lender") in substantially the form attached hereto as Exhibit B.

18.     Given the indisputable need, the lack of time to pursue alternative options, and the unliklihood of finding other sources of financing given the significant overadvance position of the Prepetition Secured Lender, the Debtors believe that the proposed DIP Facility presents the

---

[3]     Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Financing Agreement.

Debtors' only realistic option for financing at this time. Under the terms of the DIP Facility, the Debtors will enter into the DIP Financing Agreement and will grant the DIP Lender liens and security interests in all of its assets and properties as set forth therein and in the Interim Order.

19.     The DIP Facility will provide the Debtors with a discretionary revolving credit facility. The borrowings will be secured by first priority liens on the Debtors' unencumbered present and future acquired assets and properties, and second priority liens on the Debtors present and future acquired assets and properties that were subject to valid, properly perfected and unavoidable liens as of the Petition Date. The DIP Lender will be granted priming liens under Bankruptcy Code section 364(d) only with respect to the Prepetition Liens of the Prepetition Secured Creditor, who has consented to such priming on the terms set forth in the Interim Order. The DIP Lender will also be accorded superpriority administrative expense status under Bankruptcy Code section 364(c)(1). In all instances the DIP Lender has agreed to certain carveouts for Debtor and Committee professionals and fees of the Office of the United States Trustee.

20.     The material terms of the DIP Facility are as follows:[4]

Borrowers: The Debtors

Postpetition Lender: GECC

DIP Facility Amount: The facility shall be a discretionary revolving credit facility.

Borrowing Base: None; any loans will be made by the DIP Lender in its sole discretion.

Interest Rate: Index Rate LIBOR +5.95 % per annum applied against all outstanding loans from the date advanced until the date of payment and calculated on the basis of a 360 day year for the actual number of days elapsed.

Budget: None.

---

[4]     To the extent the following summary conflicts with the terms and conditions of the DIP Loan Documents, then the terms and conditions of the DIP Loan Documents and the Interim Order shall control in all respects.

<u>Maturity Date</u>:  Upon termination of the DIP Facility because of an Event of Default.:

<u>Facility and Other Fees</u>:  None.

<u>Collateral</u>:  All property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with any of the DIP Lender or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, rolling stock, vehicles and trailers, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax and other refunds, insurance proceeds, commercial tort claims, Avoidance Action Proceeds (as defined below and solely upon entry of the Final Order), rights of the Debtors under section 506(c) of the Bankruptcy Code, all other Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collectively referred to as the "<u>DIP Collateral</u>," and all such liens granted to the DIP Lender as provided in the DIP Loan Documents and for the ratable benefit of the DIP Lender pursuant to this Interim Order and the DIP Loan Documents, the "<u>DIP Liens</u>"):

(I)      pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority lien on all unencumbered DIP Collateral and, solely upon entry of the Final Order, proceeds ("<u>Avoidance Action Proceeds</u>") of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("<u>Avoidance Actions</u>"), whether received by judgment, settlement or otherwise;

(II)     pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, other than, in the case of clause (II)(x) or (II)(y), liens which are expressly stated to be primed by the liens to be granted to the DIP Lender described in clause (III) below (subject to such exception, the "<u>Prepetition Prior Liens</u>"); and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all DIP Collateral that is senior and priming to (x) the Prepetition Liens and (y) any liens that are junior to the Prepetition Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens"); provided, however, that the liens described in this subsection (III) shall be junior to the Carve-Out and the Prepetition Prior Liens.

Events of Default:  In addition to the customary events of default set forth in the DIP Loan Documents, each of the following shall constitute an Event of Default:

(i)    the failure to obtain entry of a final order on the Motion on terms satisfactory to the DIP Lender (a "Final Order") within twenty-five (25) days after the Petition Date;

(ii)    the obtaining after the Petition Date of credit or the incurring of indebtedness that is (y) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the DIP Lender, or (z) entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein, unless used to refinance the Prepetition Obligations in full;

(iii)    the entry of a final order by the Court, other than the Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (y) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral in excess of $50,000 or (z) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, (in each case with a value in excess of $50,000) which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(iv)    reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of this Interim Order;

(v)    dismissal of any of the Cases or conversion of any of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person in any of the Cases;

(vi)    upon written notice from the DIP Lender, any material misrepresentation of a material fact made after the Petition Date by any of the Debtors or their agents to the DIP Lender, or to agents for the DIP Lender, about the financial condition of the Debtors, or any of them, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral;

(vii)    upon written notice from the Prepetition Secured Lender, the material failure to make adequate protection payments or other payments to the Prepetition Secured Lender as set forth herein when due;

(viii)   the failure by the Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Interim Order; or

(ix)   any breach by the Debtors of their covenants and other undertakings in the DIP Financing Agreement.

## IV.   **RELIEF REQUESTED**

21.   By this Motion, and pursuant to Rule 4001(c) of the Bankruptcy Rules and sections 361, 363, 364(c) and 364(d) of the Bankruptcy Code, the Debtors respectfully request the Court: (a) approve the Interim Order on an interim basis pending final approval of the Motion by this Court, authorizing the Debtor to obtain adequate working capital postpetition by entering into the DIP Facility so as to provide the Debtors with a discretionary debtor-in-possession revolving credit facility; (b) grant DIP Liens and adequate protection as contemplated herein and in the Interim Order; and (c) prescribe the form and manner of notice for, and schedule a final hearing under Bankruptcy Rule 4001(c) following the fourteen (14) day period provided for in that Bankruptcy Rule (the "Final Hearing") to consider final approval of the DIP Facility in accordance with the terms of the order approving it, and the agreements, documents and instruments executed and/or delivered by the Debtors in favor of the DIP Lender in connection therewith.

## V.   **THE COURT SHOULD AUTHORIZE POSTPETITION BORROWINGS ON AN INTERIM AND FINAL BASIS UNDER THE DIP FACILITY**

22.   Pending the Final Hearing, the Debtors require the ability to borrow essential working capital funds under the DIP Facility on an interim basis. Such borrowings are necessary to continue the Debtors' normal business operations for the benefit of all parties in interest. Absent such postpetition financing, the Debtors will be forced to curtail substantially all of its normal operations with concomitant harm to the value of their businesses. The immediate and

irreparable harm that will result in the absence of approval of interim and/or final financing is inimical to the interests of all parties in interest in these cases.

23.     Bankruptcy Rule 4001(c), which governs the procedures for obtaining postpetition financing, provides in relevant part:

> (2)     *Hearing*. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Fed. R. Bankr. P. 4001(c).

24.     Accordingly, this Court is authorized to permit the Debtors to borrow funds on an interim basis postpetition under the DIP Facility.  To enable the Debtors to maintain operations and to prevent immediate and irreparable harm to their businesses pending the Final Hearing, the interim financing requested herein should be authorized by this Court.

25.     In other chapter 11 cases where, as here, the circumstances presented warranted immediate advances to the Debtor, courts have authorized interim borrowings under proposed debtor in possession financing agreements to repay prepetition indebtedness and fund essential working capital requirements. See, e.g., In re Doctors Hospital, LLP, Case No. 05-35291 [Dkt. No. 141], (Bankr. S.D. Tex. June 1, 2005); In re International Industrial Services, Inc., Case No. 03-48272 [Dkt. No. 178], (Bankr. S.D. Tex. March 9, 2004); In re Sterling Chemicals Holdings, Inc., Case No. 0137805-H4-11 (WRG) (Bankr. S.D. Tex. July 18, 2001); In re Agrifos Fertilizer, L.P., Case No. 01-35520-H2-11 (WWS) (Bankr. S.D. Tex. May 22, 2001); In re First Wave Marine, Inc., Case No. 01-31161-H2-11 (WWS) (Bankr. S.D. Tex. Feb. 6, 2001).

## VI.    THE COURT SHOULD APPROVE THE DIP FACILITY UNDER SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE

26.    Ample justification exists for the approval of the proposed DIP Facility under sections 364(c) and 364(d) of the Bankruptcy Code. As set forth above, the Debtors' ability to enter into the DIP Facility is critical to the value of the estates.  Without the DIP Facility, the Debtors will be unable to conduct customary business operations, and their estates, creditors and equity holders will be immediately and irreparably harmed.

27.    Section 364(c) of the Bankruptcy Code permits a debtor that is unable to obtain unsecured credit allowable as an administrative expense to obtain credit that: (i) has priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, (ii) is secured by a lien on property of the estate that is not otherwise subject to a lien, or (iii) is secured by a junior lien on property of the estate that is subject to alien.  See sections 364(c)(1), (2), and (3) of the Bankruptcy Code.  Additionally, section 364(d) of the Bankruptcy Code allows the court to authorize the obtaining of credit secured by a senior or equal lien on property of the estate that is subject to a lien if (a) the debtor is unable to obtain such credit otherwise and (b) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

28.    The Debtors are unable to obtain credit that is not secured by a senior lien on property of the estate.   Given the mere days that the Debtors had to prepare for the commencement of these Cases, and given the size of the overadvance under the Prepetition Secured Credit Facility, the Debtors have not had an opportunity to find another source of postpetition financing, and do not believe there is any likely alternative to the DIP Facility.

29.    The Debtor satisfies the requirements of section 364(c) because it can show that despite its good faith efforts, credit is not available to it absent the protections of section 364(c).

Bray v. Shenandoah Federal Say, and Loan Ass 'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) ("[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); see also In re Plabell Rubber Prods, Inc., 137 BR. 897, 900 (Bankr. ND. Ohio 1992); In re Sky Valley, Inc., 100 BR. 107, 113 (Bankr. ND. Ga. 1988), aff'd sub nom., Anchor Say. Bank FSB v. Sun Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); In re Ames Dept. Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y 1990) (debtors' discussions with four lenders satisfied the requirement of section 364 that the debtors were unable to obtain comparable financing on an unsecured basis). Instead, a good faith effort to obtain less burdensome credit from other sources is all that is required of a debtor, especially when time is of the essence. See In re Reading Tube Indus., 72 BR. 329, 332 (Bankr. ED. Pa. 1987). Here, the Debtors were unable to locate any alternative sources.

30.     The Debtors satisfiy the requirements of section 364(d) of the Bankruptcy Code because the Debtors are unable to obtain postpetition financing from GECC otherwise and because GECC has consented to the proposed adequate protection of its Collateral. See, e.g., Bray, 789 F.2d at 1088; In re Plabell Rubber Prods, Inc., 137 B.R. at 900; In re Sky Valley, Inc., 100 B.R. at 113, aff'd sub nom., Anchor Say. Bank, 99 B.R. at 120 n.4; In re Ames Dept. Stores, Inc., 115 B.R. at 40; In re Reading Tube Indus., 72 B.R. at 332.

31.     The Debtors assert that GECC is adequately protected in accordance with section 364(d)(1)(B) of the Bankruptcy Code by the protections afforded to it under the DIP Facility and the Interim Order.  Approving the DIP Facility on the terms requested herein will preserve the value of the Debtors' businesses by instilling confidence in the Debtors' employees, vendors and suppliers and encouraging them to extend credit to the Debtors on normal business terms.

32.     Further, the terms and provisions of the DIP Facility have been negotiated at arms' length and in good faith by the Debtors and GECC.  The terms and provisions of the DIP Facility are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the required postpetition financing.  Consequently, GECC should be accorded the benefits of section 364(e) of the Bankruptcy Code.

33.     The Debtors believe that approval of the DIP Facility is in the best interests of their creditors and all parties in interest, and that the Court should therefore grant the Motion in all respects and authorize the Debtors to enter into the DIP Facility and make interim borrowings thereunder.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Interim Order substantially in the form attached hereto authorizing the Debtors to enter into the DIP Facility on an interim basis and obtain postpetition financing from the DIP Lender pursuant to the terms thereof; (ii) grant DIP Liens and adequate protection as set forth in the Interim Order; (iii) prescribe the form and manner of notice for, and schedule a final hearing under Bankruptcy Rule 4001(c) to consider entry of a Final Order approving the DIP Facility; and (iv) grant the Debtor such other and further relief as may be just and proper under the circumstances.

Respectfully submitted this 2nd day of February, 2010.

Respectfully submitted,

_____
R. Glen Ayers
State Bar No. 01467500
David S. Gragg
State Bar No. 08253300
Allen M. DeBard
State Bar No. 24065132
Langley & Banack, Incorporated
745 East Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 (telephone)
(210) 735-6889 (fax)
gayers@langleybanack.com (email)

ATTORNEYS FOR DEBTORS


## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of February, 2010, the above and foregoing document was served by the U.S. first class mail, postage prepaid on the parties listed on the Service List attached hereto.

_____
R. GLEN AYERS, JR.

# EXHIBIT "A"

## EXHIBIT A

### LIMITED SERVICE LIST FOR
### USA DRY VAN LOGISTICS, L.L.C., *et al.*

**Debtors**
Golagale Investment Co.,
L.L.C.
LA & G Investment Co.,
L.L.C.
North American Trailer
Rentals, L.L.C.
South Texas Petroleum,
L.L.C.
USA Dry Van Logistics,
L.L.C.
USA Log. Carriers, L.L.C.
USA Logistics Carriers,
L.L.C.
3010 West Military
McAllen, Texas 78503

**Debtors' Attorney**
R. Glen Ayers, Esq.
David Gragg, Esq.
Allen M. DeBard, Esq.
Langley & Banack, Inc.
745 E. Mulberry, Suite 900
San Antonio, Texas 78216

**US Trustee**
Office of the US Trustee
Attn:  Charles Sterbach
606 North Carancahua Street
Corpus Christi, Texas  78476

**Parties-in-Interest**
Internal Revenue Service
P. O. Box 21126
Philadelphia, PA  19114

US Attorney
910 Travis, Suite 1500
Houston, Texas  77002

**Secured Creditors and their
counsel:**
General Electric Capital
Corporation
Attn: Hannah L. Blumenstiel
800 Long Ridge Road
Stamford, CT 06927

General Electric Capital
Corporation
Attn: Rob McNabb
201 Main Avenue
Norwalk, CT 06851

J. Douglass Bacon
Stephen R. Tetro II
Latham & Watkins
233 South Wacker Drive,
Suite 5800
Chicago, Illinios 60606

Shelby A. Jordan
Peter Holzer
Jordan, Hyden, Womble,
Culberth & Holzer, P.C
500 N. Shoreline Blvd., Suite
900
Corpus Christi, Texas

**20 Largest Unsecured
Creditors**

**Golagale Investment Co.,
LLC**
Aurelio Aleman
4405 S H ST
McAllen, TX 78503

Everhard & Company
Certified Public Accountants
PO Box 6137
McAllen, TX  78502-6137

George Gomez
2107 La Condesa
Edinburg, TX 78539

Sergio Lagos
2400 San Miguel
Mission, TX 78572

**LA & G Investments Co.,
L.L.C.**
Hidalgo County Tax Office
Hidalgo County Tax Assessor
-Collector
PO Box 178
Edinburg, TX  78540

Art Salinas Engineering And
Supplies
1524 Dove Ave
McAllen, TX  78504

Capital One
Attn: Commercial Loan
Processing Dept.
P.O. Box 4649
Houston, TX  77210-4649

Lone Star National Bank
206 W. Ferguson
Pharr, TX  78577

**North American Trailer
Rentals, L.L.C.**
Capital One Bank
509 S. Main
McAllen, TX  78501

GE Capital Solutions
PO Box 822108
Philadelphia, PA  19182-
2108

Navistar Financial Corp
425 N Martingale Road Ste
1800
Schaumburg, IL  60173

Zions Credit Corporation
PO Box 26536
Salt Lake City, UT  84126-
0536

**South Texas Petroleum,
L.L.C.**
Argus Security Systems
314 Ash
McAllen, TX  78501

Armando Barrera Jr.
P.O. Box 178
Edinburg, TX 78540

Capital One
P.O. Box 650743
Dallas, TX 75265

CS Safety
P.O. Box 4527
McAllen, TX 78501

Department Of Public Safety
6200 Guadalupe Bldg. P
Austin, TX 78752-4019

## EXHIBIT A

## LIMITED SERVICE LIST FOR
## USA DRY VAN LOGISTICS, L.L.C., *et al.*

Digital Office System
4800 W. Expressway 83
McAllen, TX 78501

DM2 Software  Inc
7700 NE Greenwood
Dr.Ste.200
Vancouver, WA 98662

Everhard & Company
P.O. Box 6137 78502
Mcallen, TX 78502-6137

Fleetpride
P.O. Box 847118
Dallas, TX 75284-7118

FMA, INC.
P.O. Box 340021
Austin, TX 78734-0021

French-Ellison Truck Center
4300 N Cage Street
Pharr, TX 78577

GE Capital
P.O. Box 740425
Atlanta, GA 30374-0425

Hose Of South Texas
P.O. Box 9576
Corpus Christi, TX 78469

Marlin Leasing
P.O. Box 13604
Philadelphia, PA 19101

North American
Compliance Services
2390 Central Blvd. Ste, E
Brownsville, TX 78520

Paccar Financial
P.O. Box 676014
Dallas, TX 75267

People's Capital And Leasing
255 Bank Street
Waterbury, CT 06702

Premium Assignment
Corporation
P.O. Box 3100
Tallahassee, FL 32315

Sprint
P.O. Box 4181
Carol Stream, IL 60197-4181

World Fuels Services
1101 5th Ave. Ste. 280
San Rafael, CA 94901

**USA Dry Van Logistics,
L.L.C.**
VIPA

Fletes Pavi
Carr Autotonico Guadalajara

HG Transportaciones

Gonzalez Trucking

Transportes Etola, SA de CV
Carr Mexico Queretaro KM
34.5

R. S. Transfer, SA de CV

Transportadora Jema, SA de
CV
Carretera Mty Monclova KM
5.3

Transportes Villerral Berlang
Carr A Piedras Negras KM
9.7

Central De Fletes Monterrey
SA
KM 21.5 Carr Nuevo Laredo

TNL Express SA de CV
Carr Aeropuerto KM 1-A

Transportes Especial
Autorizada SA
Carr Nacional KM 14

Velotrans, SA de CV
Independencia No. 110

Grupo Camionera Regional

Autolineas MH, SA de CV
Carratera Laredo KM 26

Super Transporte
Internacional
Carr Piedras Negras KM 17

Auto Express Hercules, SA
de CV
Camino Escobedo-El
Carmen NO

Rocio Karina Gutierrez De
Hoyo
La Paz 220
McAllen, TX 78503

Carga Tamez, SA de CV
Chihuahua 4305
Nuevo Laredo, TM
Mexico

Transportes Americanos

Transportadora Egoba, SA
de CV

**USA Log. Carriers, L.L.C.**
Capital One, NA
PO Box 650743
Dallas, TX 75265-0743

Comdata
PO Box 845738
Dallas, TX 75284-5738

Gallagher Bassett Services,
Inc.
8 Flowers Drive
Attn: Sally Mixell
Mechanicsburg, PA 17050

Cintas Corporation #538
700 Dawson Road
Mercedes, TX 78570

Southern Tire Mart
6875 Speedway Blvd., Suite
U-105
Las Vegas, NV 89115

Comcover Group, Inc.
2800 West State Road 84
Suite 116
Fort Lauderdale, FL 33312

## EXHIBIT A

## LIMITED SERVICE LIST FOR
## USA DRY VAN LOGISTICS, L.L.C., *et al.*

Skybiz, Inc.
22455 David Drive, Suite 100
Sterling, VA 20164

French Ellison Truck Center
PO Box 200187
San Antonio, TX 78220

Hollon Oil Company
1300 Davenport
Weslaco, TX 78596

TMW Systems, Inc.
c/o US Bank
PO Box 643562
Cincinnati, OH 45264-3562

Peoplenet
NW 5489
PO Box 1450
Minneapolis, MN 55485-5489

Button McCumber & Cortez,
LLP
PO Box 5238
Brownsville, TX 78523-5238

Securities Security Services
USA
12672 Collections Center
Chicago, IL 60693

Blackhawk Security &
Investigations
PO Box 1311
Mission, TX 78573-1311

National Interstate
3250 Interstate Drive
Richfield, OH 44286-9000

North American Compliance
820 W. Price Road
Brownsville, TX 78520

Jackson Walker LLP
PO Box 130989
Dallas, TX 75313-0989

The Center of Industrial
Rehabilitation
709 S. Broadway
McAllen, TX 78501

Michelin North America, Inc.
PO Box 100860
Atlanta, GA 30384-0860

**USA Logistics Carriers,
L.L.C.**
FCC Equipment Financing
Bank One
Lockbox 905010
906 Tyvola Rd., Suite 108
Charlotte, NC 28217

Peoples Capital and Leasing
255 Bank Street, 4th Floor
Waterbury, CT 06702

Marquette Equipment
Finance
6975 Union Park Center, Ste.
200
Midvale, UT 84047

GE Capital
PO Box 532617
Atlanta, GA 30353-2617

Bank of America Leasing &
Capital
KBROPH Mail Code IL 1-
231-07-28
231 South LaSalle Street
Chicago, IL 60604

CSI Leasing, Inc.
PO Box 775486
St. Louis, MO 63177-5485

Paccar Financial Corp.
PO Box 676014
Dallas, TX 75267-6014

Alter Moneta Corp.
50 Lakefront Blvd.
Buffalo, NY 14202

Capital One Equipment
Dept. 153
PO Box 4889
Houston, TX 77210-4869

Center Capital Corporation
PO Box 330
Hartford, CT 06141-0330

Regions Equipment Finance
Corp.
PO Box 11407
Birmingham, AL 35246-1090

Navistar Financial
PO Box 96070
Chicago, IL 60693-6070

# EXHIBIT "B"

## ASSUMPTION AGREEMENT AND
## AMENDMENT TO LOAN DOCUMENTS

THIS ASSUMPTION AGREEMENT AND AMENDMENT TO LOAN DOCUMENTS (this "Amendment") is made and entered into as of February __, 2010, by and among General Electric Capital Corporation ("GECC"), U.S.A. Logistics Carriers, LLC, USA Log. Carriers, LLC and USA Dry Van Logistics, LLC (collectively, the "Borrowers" and each, individually, a "Borrower") and Golagale Holdings, LLC, as a guarantor (the "Guarantor").

## RECITALS

A.    Borrowers, each as pre-petition debtors, and GECC are the parties to (i) that certain Transportation Accounts Financing And Security Agreement dated as of May 8, 2003 (as amended, modified, restated or supplemented prior to the date hereof, the "Pre-Petition Loan Agreement") and (ii) such other instruments, documents and agreements executed between or among Borrowers and GECC (all such instruments, documents and agreements, together with the Pre-Petition Loan Agreement, in each case as amended, modified, restated or supplemented prior to the date hereof, collectively, the "Original Loan Documents"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Pre-Petition Loan Agreement, as amended hereby.

B. The Guarantor, as pre-petition guarantor, guaranteed all the obligations of Borrowers, as pre-petition debtors, under that certain Continuing Guarantee dated as of October 27, 2009  (the "Pre-Petition Guaranty").

C. Each of the Borrowers has filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas Corpus Christi Division (the "Bankruptcy Court"), on February 1, 2010 (the "Petition Date"), Case Nos. 08-11-922 and 08-11-923, respectively (collectively, the "Case").

D.    Events of Default have occurred and are continuing under the Original Loan Documents, including, without limitation, the failure of Borrowers to repay substantial overadvances and the commencement of the Case.

E.    In order to continue its operations as a debtors-in-possession under the Bankruptcy Code pending the Case, Borrowers have requested that GECC continue making secured loans to Borrowers (the "DIP Financing"). GECC is willing to continue financing Borrowers on a discretionary basis only if, among other things, the Original Loan Documents are amended as hereinafter set forth and the Bankruptcy Court enters interim and final orders approving this Amendment and otherwise in form and substance satisfactory to GECC.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

       1.     <u>Amendments</u>. The parties hereby amend the Original Loan Documents as follows:

      (a)     From and after the date hereof, all references in the Original Loan Documents to "U.S.A. Logistics Carriers, LLC," "Debtor," "Grantor," "Mortgagor," the "Company", "Borrower" and all other references to U.S.A. Logistics Carriers, LLC in any capacity shall be deemed to be references to U.S.A. Logistics Carriers, LLC both before the Petition Date, as pre-petition debtor, and on and after the Petition Date, as debtor-in-possession in the Case.

      (b)     From and after the date hereof, all references in the Original Loan Documents to "USA Log. Carriers, LLC," "Debtor," "Grantor," "Mortgagor," the "Company", "Borrower" and all other references to USA Log. Carriers, LLC in any capacity shall be deemed to be references to USA Log. Carriers, LLC both before the Petition Date, as pre-petition debtor, and on and after the Petition Date, as debtor-in-possession in the Case.

      (c)     From and after the date hereof, all references in the Original Loan Documents to "USA Dry Van Logistics, LLC," "Debtor," "Grantor," "Mortgagor," the "Company", "Borrower" and all other references to USA Dry Van Logistics, LLC in any capacity shall be deemed to be references to USA Dry Van Logistics, LLC both before the Petition Date, as pre-petition debtor, and on and after the Petition Date, as debtor-in-possession in the Case.

      (d)     Article 1 of the Pre-Petition Loan Agreement is hereby amended by adding in their proper alphabetical order the definitions of "Bankruptcy Code," "Bankruptcy Court," "Case," "DIP Financing," "Original Loan Documents," "Petition Date" and "Pre-Petition Loan Agreement" set forth in the recitals of this Amendment.

      (e)     Article 1 of the Pre-Petition Loan Agreement is hereby further amended by adding the following definitions in their proper alphabetical order (to the extent such terms are not already defined in the Pre-Petition Loan Agreement) and by substituting the following definitions for the existing definitions of such terms (to the extent such terms are currently defined in the Pre-Petition Loan Agreement):

          "<u>Agreement</u>" shall mean the Accounts Financing and Security Agreement, dated as of May 8, 2003 among Borrowers and GECC, as amended, modified, restated or supplemented from time to time, including, without limitation, by (a) the Assumption Agreement and Amendment to Loan Documents dated as of February __, 2010 and (b) by any order of the Bankruptcy Court relating to the DIP Financing.

2

"Borrowers" shall mean U.S.A. Logistics Carriers, LLC, USA Log. Carriers, LLC and USA Dry Van Logistics, LLC, each as a debtor and debtor-in-possession in the Case under the Bankruptcy Code.

"Commencement Date" shall mean the date of that certain Assumption Agreement and Amendment to Loan Documents dated as of February __, 2010 among Borrowers and GECC.

"DIP Maximum Amount" shall mean (i) during the term the Interim Order is still in effect, such amount as shall be determined by GECC in its sole discretion and (ii) upon entry of the Final Order and until the DIP Termination Date, the amount set forth in such Final Order.

"DIP Termination Date" shall mean the earliest to occur of (i) termination of the DIP Financing pursuant to the terms of the DIP Orders, (ii) 25 days after the Commencement Date if a Final Order is not entered by such date, (iii) at GECC's election upon the occurrence of an Event of Default (as defined in the DIP Orders) and (iv) consummation of a sale or sales of all or substantially all of any Borrower's assets as a going concern or in an orderly liquidation.

"DIP Orders" shall mean the Interim Order and the Final Order, as applicable.

"Final Order" shall mean an order of the Bankruptcy Court entered in the Case after the Final Hearing as defined in the Interim Order, inter alia, authorizing Borrowers, as debtors-in-possession, to incur secured indebtedness pursuant to Section 364 of the Bankruptcy Code, which order shall be in form and substance satisfactory to GECC.

"Interim Order" shall mean the order of the Bankruptcy Court entered in the Case pursuant to Sections 363 and 364 of the Bankruptcy Code, inter alia, authorizing Borrowers, as debtor-in-possession, to enter into that certain Assumption Agreement and Amendment to Loan Documents dated as of February __, 2010 by and among Borrowers, the "Guarantor" named therein and GECC, which order shall be in form and substance satisfactory to GECC.

"Loan Documents" shall mean this Agreement, the Original Loan Documents, the Interim Order, the Final Order and all other instruments, documents and agreements executed in connection therewith.

(f)     "The Pre-Petition Loan Agreement is amended by adding the following new paragraph to the end of Section 2.01 thereto to read as follows:

"During the period commencing on the Commencement Date and ending on the DIP Termination Date, no loans shall be made under the immediately preceding paragraph and GECC may from time to time lend

3

to Borrowers, at GECC'S sole discretion and without any obligation to lend, revolving loans in an aggregate principal amount not to exceed at any time outstanding the DIP Maximum Amount then in effect."

(g)     The Pre-Petition Loan Agreement is amended by adding the following new sentence to the end of Section 2.04 thereto to read as follows:

"2.04.   Borrowers shall pay interest on the loans advanced after the Commencement date at the same rate and pursuant to the same terms as interest is paid on all other Obligation in accordance with this Section 2.04."

(h)     The Pre-Petition Loan Agreement is amended by adding the following new language at the end of Section 4.07 to read as follows (just prior to the period):

"except for the filing of the Case".

(i)     The Pre-Petition Loan Agreement is amended by adding the following new language at the end of the first sentence in Section 4.08 to read as follows (just prior to the period):

"except for the Case".

(j)     The Pre-Petition Loan Agreement is amended by amending and restating Section 4.10 thereto to read as follows:

"4.10  [Intentionally Deleted]".

(k)     The Pre-Petition Loan Agreement is amended by adding a new Section 5.05 thereto to read as follows:

"5.05  Notwithstanding anything in the Loan Documents to the contrary, Borrowers shall (i) comply with all covenants, terms and conditions set forth in the DIP Orders, and (ii) permit GECC and its professionals to conduct (and provide cooperation to GECC and its professionals) in respect of field exams and inventory appraisals, as deemed reasonably necessary by GECC and at the expense of Borrowers and Borrowers shall provide GECC and its professionals with reasonable access to the Collateral to permit GECC to perform such valuations and analyses at GECC's discretion."

(l)     The Pre-Petition Loan Agreement is amended by amending and restating Section 7.04 thereto to read as follows:

"7.04 Notwithstanding anything in this Agreement to the contrary, proceeds of Collateral shall be applied in accordance with the terms of the DIP Orders."

CH\1147733.5

(m)     The Pre-Petition Loan Agreement is amended by amending the list of Events of Default set forth in Section 8.01 of the Pre-Petition Loan Agreement to include each of the "Events of Default" under (and as defined in) the DIP Orders.

2.     Borrowers' Agreement to Assume Certain Obligations and be Bound; Confirmation of Security Interest.  Subject to all conditions and limitations in the DIP Orders, (a) Borrowers hereby agree to be bound by the terms of the Loan Documents as if all references therein to "Borrowers," "Debtors," "Grantors," "Mortgagors," the "Company" and all other references to any Borrower in any other capacity included a reference to it as debtor-in-possession, (b) each Borrower specifically confirms that the security interests described in the Loan Documents  include a duly authorized grant by it of security interests in its assets, whether arising or acquired before, on or after the Petition Date, to secure payment of the Obligations arising both before and after the Petition Date, and (c) each Borrower grants liens and security interests in favor of GECC on all the post-petition assets of Borrowers  in accordance with the terms and limitations set forth in the DIP Orders.

3.     Amendment Subject to Interim Order and Final Order; Entire Agreement and Acknowledgements of the Parties.  GECC and Borrowers agree that this Amendment is qualified in its entirety by the terms of the Interim Order and the Final Order, and in the event of any conflict between any term of this Amendment and any term of the Interim Order or the Final Order, the applicable term of the Interim Order or Final Order, as applicable, shall govern. GECC and Borrowers agree that the amendments set forth in this Amendment (as modified by the Interim Order and the Final Order, as provided above) constitute the entire agreement of the parties with respect to the matters set forth herein, shall be limited precisely as written and shall not be deemed to be a consent to any waiver, amendment or modification of any other term or condition of any of the Loan Documents.  Nothing set forth in this Amendment shall be deemed to amend or modify the terms or amount of the Obligations outstanding on or prior to the Petition Date or otherwise categorize such Obligations as post Petition Date Obligations.

4.     Conditions Precedent.  The effectiveness of this Amendment shall be subject to satisfaction of the following conditions:

(a)     Receipt by GECC of a counterpart to this Amendment, duly executed by Borrowers and Guarantor;

(b)     Entry by the Bankruptcy Court of the Interim Order in form and substance satisfactory to GECC; and

(c)     Receipt by GECC of all other "first day" orders entered on or about the time of the Petition Date which  shall be reasonably satisfactory in form and substance to GECC.

5.     References in Other Documents.  All references to any of the Loan Documents shall be deemed to be a reference to such Loan Document as amended hereby.

5

6. <u>Miscellaneous</u>

(a) This Amendment may be signed in any number of counterparts, each of which constitutes an original, but all of which, taken together, shall constitute one and the same instrument.

(b) It is the parties' intention that this Amendment be interpreted in such a way that it is valid and effective under applicable law; however, if one or more of the provisions of this Amendment shall for any reason be found to be invalid or unenforceable, the remaining provisions of this Amendment shall be unimpaired.

7. <u>Reaffirmation of Guaranty</u>. By executing this Amendment, Guarantor agrees that its guaranty of the Obligations shall apply to all the Obligations under the Loan Documents, after giving effect to this Amendment, and the Pre-Petition Guaranty shall remain in full force and effect in all cases subject to the terms of the DIP Orders.

8. <u>Choice of Law</u>. Any dispute between GECC and Borrowers arising out of, connected with, related to, or incidental to the relationship established between them in connection with this Amendment and the Loan Documents, and whether arising in contract, tort, equity or otherwise, shall be resolved in accordance with the Bankruptcy Code and the internal laws (and not the conflicts of law provisions) of the State of Texas.

[SIGNATURE PAGES FOLLOW]

CH\1147733.5

IN WITNESS WHEREOF, the parties have duly executed and delivered this Assumption Agreement and Amendment to Loan Documents as of the day and year first above written.

**BORROWERS:**

**U.S.A. LOGISTICS CARRIERS, LLC**

By: _____
Name: _____
Title: _____

**USA LOG. CARRIERS, LLC**

By: _____
Name: _____
Title: _____

**USA DRY VAN LOGISTICS, LLC**

By: _____
Name: _____
Title: _____

**GUARANTOR:**

**GOLAGALE HOLDINGS, LLC**

By: _____
Name: _____
Title: _____

**GENERAL ELECTRIC CAPITAL CORPORATION**

By: _____
Name: _____
Title: _____