

*12*

ENTERED
02/03/2010

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| IN RE: | § § § | Case No. 10-_____20102 |
| USA DRY VAN LOGISTICS, LLC, *et al.*,[1] | § § | (Chapter 11) |
| DEBTORS. | § § § | Jointly Administered |

**INTERIM ORDER (I) AUTHORIZING SECURED AND SUPERPRIORITY
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 363, 364 AND
507(b), (II) GRANTING OTHER RELATED RELIEF AND (III) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion, dated February 2, 2010, (the **"DIP Motion"**), of the above-captioned debtors and debtors in possession (collectively, the **"Debtors"** or the **"Borrowers"**), in the above-referenced chapter 11 cases (the **"Cases"**), seeking entry of an interim order (this **"Interim Order"**) pursuant to sections 363, 364 and 507(b) of chapter 11 of title 11 of the United States Code (as amended, the **"Bankruptcy Code"**), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the **"Local Rules"**), that, among other things:

(i)      authorizes the Debtors to obtain senior secured postpetition financing (the **"DIP Loans,"** and such credit facility, the **"DIP Facility"**) pursuant to the terms of (x) this Interim Order, (y) that certain ***Assumption Agreement and Amendment to Loan Documents***, dated as of February 2, 2010 (as the same may be amended, restated, supplemented or otherwise

---

[1]      The Debtors in these chapter 11 cases are: Golagale Holdings, LLC; USA Logistics Carriers, LLC, USA; USA Log. Carriers, LLC, USA Dry Van Logistics, LLC; North American Trailer Rentals, LLC; South Texas Petroleum, LLC; and, L A & G Investments, LLC. The corporate address for all debtors is 3010 West Military, McAllen, Texas 78503. Joint administration under the style above and the case number above has been ordered by the United States Bankruptcy Court on February 2, 2010.

modified from time to time, the "*DIP Financing Agreement*"), by and among the Borrowers and General Electric Capital Corporation ("*GECC*," or the "*DIP Lender*") in substantially the form attached to the DIP Motion;

      (ii)    approves the terms of the DIP Financing Agreement;

      (iii)    authorizes the Borrower at any time prior to the entry of the Final Order (as defined herein) to borrow under and pursuant to the terms of the DIP Facility subject to and at the sole discretion of the DIP Lender;

      (iv)    schedules a final hearing on the DIP Motion (the "*Final Hearing*") to consider entry of a final order (the "*Final Order*"); and

      (v)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the DIP Financing Agreement, and the evidence submitted or proffered at the Interim Hearing; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the DIP Motion and the Interim Hearing having been provided in a sufficient manner; an Interim Hearing having been held and concluded on February 3, 2010; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[2], that:**

A.  **Petition Date**.  On February 2, 2010, (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (this "**Court**").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, the "**Committee**"), trustee, or examiner has been appointed in the Cases.

B.  **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Rules.

C.  **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, February 2, 2010, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Office of the United States Attorney for the Southern District of Texas, (iii) the Internal Revenue Service, (iv) those entities or individuals included on the Debtors' list of 20 largest unsecured creditors on a consolidated basis, (v) counsel to the Prepetition Secured Lender, (vi) the Prepetition Secured Lender, (vii) counsel to the DIP Lender

---

[2]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

and (viii) all known secured creditors of the Debtors.  Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

D.   **Debtors' Stipulations Regarding the Prepetition Secured Credit Facility**. Without prejudice to the rights of parties in interest to the extent set forth in paragraph 6 below, the Debtors stipulate and agree (paragraphs D(i) through D(iv) hereof shall be referred to herein collectively as the *"Debtors' Stipulations"*) as follows:

(i)   Prepetition Secured Credit Facility.   Pursuant to that certain Transportation Accounts Financing and Security Agreement dated as of May 8, 2003 (as amended or otherwise modified from time to time, the *"Prepetition Discretionary Financing Agreement"*), originally between Citicapital Commercial Corporation, as lender, and U.S.A. Logistics Carriers, LLC, as borrower, and, as amended, among General Electric Capital Corporation, as lender (the *"Prepetition Secured Lender"*) and the Debtors, as borrowers, the Prepetition Secured Lender agreed to extend demand loans, on a solely discretionary basis, to the Borrowers (the *"Prepetition Secured Credit Facility"*).  The Prepetition Discretionary Financing Agreement, along with any other agreements and documents executed or delivered in connection therewith, are collectively referred to herein as the *"Prepetition Loan Documents"*.  All obligations of the Debtors arising under the Prepetition Discretionary Financing Agreement (including, without limitation, the "Obligations" as defined therein) or any other Prepetition Loan Document shall collectively be referred to herein as the *"Prepetition Obligations."*[3]

---

[3]   In addition to the Prepetition Obligations under the Prepetition Loan Documents, GECC and/or affiliates thereof may also have additional financing arrangements or secured financing arrangements with the Debtors, and the rights of GECC and/or its affiliates (including the right to adequate protection) with respect to such additional financing arrangements and secured financing arrangements are hereby reserved.

(ii)   <u>Prepetition Liens and Prepetition Collateral</u>.  Pursuant to the Prepetition Discretionary Financing Agreement, each Borrower granted to the Prepetition Secured Lender, to secure the Prepetition Obligations, a security interest in and continuing lien (the "*Prepetition Liens*") on substantially all of such Debtor's assets and property and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.   All collateral granted or pledged by such Debtors pursuant to any Prepetition Loan Document, including, without limitation, the "Collateral" as defined in the Prepetition Discretionary Financing Agreement, and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "*Prepetition Collateral*." As of the Petition Date, (I) the Prepetition Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Secured Lender for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate in all respects only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) valid, perfected and unavoidable liens permitted under the applicable Prepetition Loan Documents, but only to the extent that such liens are permitted by the applicable Prepetition Loan Documents to be senior to or *pari passu* with the applicable Prepetition Liens, and (II) (w) the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Obligations exist, (y) no portion of the Prepetition Obligations or any payments made to the Prepetition Secured Lender is subject to avoidance,

5

recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) each of the Guarantees continues in full force and effect notwithstanding any financing and financial accommodations extended by the DIP Lender to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(iii)    _Amounts Owed under Prepetition Loan Documents_.  On January 25, 2010, representatives of the Debtors informed the Prepetition Secured Lender of a substantial overstatement in Accounts and Eligible Accounts that had been previously reported to the Prepetition Secured Lender and against which the Prepetition Secured Lender had advanced loans, resulting in an immediate substantial overadvance under the Prepetition Loan Documents. As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Secured Lender pursuant to the Prepetition Loan Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the Prepetition Secured Lender in the aggregate principal amount of not less than $28,773,140 as of January 29, 2010, _plus_ all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents) now or hereafter due under the Prepetition Loan Documents.

(iv)    _Release of Claims_.  Subject to the reservation of rights set forth in paragraph 6 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released the Prepetition Secured Lender, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "**_Prepetition Secured Lender Releasees_**") of any and all "claims" (as

6

defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition Secured Lender Releasees, whether arising at law or in equity, with respect to the Prepetition Obligations and Prepetition Liens, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens securing the Prepetition Obligations.

E.   **Findings Regarding the DIP Facility**.

(i)   <u>Need for Postpetition Financing</u>.  The Debtors have an immediate need to obtain the DIP Facility to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operation needs.  The Debtors' access to sufficient working capital and liquidity through borrowing under the DIP Facility is vital to the continued operation of the Debtors and the maximization of the Debtors' value for the Debtors' estates.

(ii)   <u>No Credit Available on More Favorable Terms</u>.  As set forth in the DIP Motion, the Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents.  The Debtors are also unable to obtain secured credit without granting to the DIP Lender the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents,

collectively, the "*DIP Protections*") and providing the Prepetition Secured Lender the adequate protection more fully described in paragraph 4 below.

      F.    **Adequate Protection for Prepetition Secured Lender.**   The DIP Facility contemplated hereby provides for a priming of the Prepetition Liens of the Prepetition Secured Lender pursuant to section 364(d) of the Bankruptcy Code. The Prepetition Secured Lender is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for the Diminution in Value (as defined below) of the Prepetition Collateral. Based on the DIP Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, uses of the DIP Facility contemplated hereby are fair and reasonable.

      G.    **Limited Consent.** The consent of the Prepetition Secured Lender to the priming of its Prepetition Liens by the DIP Liens is limited to the DIP Facility presently before this Court, and shall not, and shall not be deemed to, extend to any other postpetition financing or to any modified version of this DIP Facility with any party other than GECC as DIP Lender. Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Lender are or will be adequately protected with respect to any non-consensual priming of the Prepetition Liens.

      H.    **Section 552.** In light of the subordination of their liens and super-priority administrative claims to (i) the Carve-Out in the case of the DIP Lender, and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured Lender, each of the DIP Lender and the Prepetition Secured Lender is entitled to all of the rights and benefits of section 552(b) of the

Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

I.    **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)    The DIP Lender has indicated a willingness to provide postpetition secured financing via the DIP Facility to the Borrower in accordance with the DIP Loan Documents and this Interim Order.

(ii)    The terms and conditions of the DIP Facility pursuant to the DIP Loan Documents and this Interim Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances.

(iii)    The DIP Facility and DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors and the DIP Lender with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Lender and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

J.    **Relief Essential; Best Interest.**  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to maximize value will be immediately and irreparably harmed. Consummation of the DIP Facility in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition Secured Lender and the

DIP Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

2.     **DIP Loan Documents and DIP Protections**.

(a)     Approval of DIP Loan Documents.  The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver and perform under the DIP Loan Documents and to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents.  Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     DIP Obligations.  For purposes of this Interim Order, the term "*DIP Obligations*" shall mean all amounts owing under the DIP Financing Agreement and other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Financing Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under this Interim Order or the DIP Loan Documents), and any obligations in respect of indemnity claims, whether contingent or otherwise.  Nothing set forth in

this Interim Order or in the DIP Loan Documents shall be deemed to amend or modify the terms or amount of the Obligations outstanding on or prior to the Petition Date or otherwise categorize such Obligations as DIP Obligations.

(c)    Authorization to Incur DIP Obligations.    To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the date of entry of the Final Order (the "*Interim Period*"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and subject to the sole discretion of the DIP Lender to make any loan under the DIP Facility at any time, whether or not an Event of Default has occurred, the Debtors are hereby authorized to borrow under and pursuant to the terms of the DIP Facility (following the expiration of the Interim Period, the Borrower's authority to borrow further DIP Loans, if any, will be governed by the terms of the Final Order).

(d)    Events of Default.  The occurrence of any of the following events, unless waived in writing by the DIP Lender shall constitute an event of default (each, an "*Event of Default,*" and, collectively, the "*Events of Default*"):

(i)    the failure to obtain the Final Order within twenty-five (25) days after the Petition Date;

(ii)    the obtaining after the Petition Date of credit or the incurring of Indebtedness that is (y) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the DIP Lender, or (z) entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein, unless used to refinance the Prepetition Obligations in full;

(iii)    the entry of a final order by the Court, other than the Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (y) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral in excess of $50,000 or (z) with respect any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, (in each case with a value in excess of $50,000)

11

which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(iv)    reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of this Interim Order;

(v)    dismissal of any of the Cases or conversion of any of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person in any of the Cases;

(vi)    upon written notice from the DIP Lender, any material misrepresentation of a material fact made after the Petition Date by any of the Debtors or their agents to the DIP Lender, or to agents for the DIP Lender, about the financial condition of the Debtors, or any of them, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral;

(vii)    upon written notice from the Prepetition Secured Lender, the material failure to make adequate protection payments or other payments to the Prepetition Secured Lender as set forth herein when due;

(viii)    the failure by the Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Interim Order; or

(ix)    any breach by the Debtors of their covenants and other undertakings in the DIP Financing Agreement.

(e)    Interest, Fees, Costs and Expenses.   The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

(f)    Use of DIP Facility and Proceeds of DIP Loans.   The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of any other Chapter 11 plan or plans with respect to any of the Debtors, except with respect to (a) the Prepetition Obligations as set forth in this Interim Order; (b) as provided in the First Day Orders, which First Day Orders shall be in form and substance acceptable to the DIP Lender; (c) as provided in the motions, orders and requests for relief, each in form and

12

substance acceptable by the DIP Lender and the Prepetition Secured Lender prior to the request for such relief; and (d) or as otherwise provided in the DIP Financing Agreement.

(g)     _Discretionary Nature of DIP Facility._  As was the case with the Prepetition Discretionary Financing Agreement, the DIP Lender shall have no obligation to make any loan under the DIP Loan Documents at any time during the Interim Period.  All loans under the DIP Loan Documents shall be made at the sole discretion of the DIP Lender, whether or not an Event of Default has occurred.

(h)     _DIP Liens._  As security for the DIP Obligations, the following security interests and liens, which shall immediately and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable upon the date the Court enters this Interim Order, are hereby are granted by the Debtors to the DIP Lender on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with any of the DIP Lender or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, rolling stock, vehicles and trailers, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax and other refunds, insurance proceeds, commercial tort claims, Avoidance Action Proceeds (as defined below and solely upon entry of the Final Order), rights of the Debtors under section 506(c) of the Bankruptcy Code, all

13

other Collateral and all other "property of the estate" (within the meaning of the Bankruptcy

Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or

hereafter acquired or created, and all rents, products, substitutions, accessions, profits,

replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing

collateral collectively referred to as the *"DIP Collateral,"* and all such liens granted to the DIP

Lender as provided in the DIP Loan Documents and for the ratable benefit of the DIP Lender

pursuant to this Interim Order and the DIP Loan Documents, the *"DIP Liens"*):

> (I)     pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority lien on all unencumbered DIP Collateral and, solely upon entry of the Final Order, proceeds (*"Avoidance Action Proceeds"*) of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (*"Avoidance Actions"*), whether received by judgment, settlement or otherwise;

> (II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, other than, in the case of clause (II)(x) or (II)(y), liens which are expressly stated to be primed by the liens to be granted to the DIP Lender described in clause (III) below (subject to such exception, the *"Prepetition Prior Liens"*); and

> (III)   pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all DIP Collateral that is senior and priming to (x) the Prepetition Liens and (y) any liens that are junior to the Prepetition Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the *"Primed Liens"*); provided, however, that the liens described in this subsection (III) shall be junior to the Carve-Out and the Prepetition Prior Liens.

Notwithstanding anything herein to the contrary, no Debtor and no trustee or other estate

representative in these Cases or in any Successor Case may release or compromise any rights of

the Debtors or the estates under section 506(c) of the Bankruptcy Code with the consent of the

14

DIP Lender or as otherwise ordered by the Court following notice to the DIP Lender and a hearing.

(i)     DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Interim Order or the other DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Lender shall in each and every case be first priority senior liens that (i) are subject only to the Prepetition Prior Liens, and to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in sub-clause (i) of this clause (k), are senior to all prepetition and postpetition liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Super-Priority Claims (as defined below) (A) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (y) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (z) any intercompany or affiliate liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "*Successor Case*"), and/or upon the dismissal of any of the Cases.

(j)     Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto

(including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms.

      (k)    <u>Super-Priority Administrative Claim Status</u>.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, except with respect to Avoidance Actions, all of the DIP Obligations shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Super-Priority Claims), unsecured claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "*DIP Super-Priority Claims*").  The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  Other than as provided in the DIP Financing Agreement and this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be,

16

senior to, prior to or on a parity with the DIP Liens and the DIP Super-Priority Claims or the DIP

Obligations, or with any other claims of the DIP Lender arising hereunder.

     3.    **Authorization to Use Proceeds of the DIP Facility**.

Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, the

Debtors are authorized to use proceeds of DIP Loans from and after the Closing Date, and each

Debtor shall be prohibited from any time using proceeds of DIP Loans except in accordance with

the terms and conditions of this Interim Order and the DIP Loan Documents. The DIP Lender

may terminate the applicable Debtor's right to use proceeds of DIP Loans, DIP Collateral and

Prepetition Collateral without further notice, motion or application to, order of, or hearing

before, the Court, subject in all respects to paragraph 13 below, immediately upon notice to such

effect by the DIP Lender to the Debtors after the occurrence and during the continuance of an

Event of Default.

     4.    **Adequate Protection for Prepetition Secured Lender**. As adequate protection

for, and in an aggregate amount equal to, the diminution in value (collectively, "***Diminution in***

***Value***") of the interests of the Prepetition Secured Lender in the Prepetition Collateral from and

after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code,

resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral, the

granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-

Out, and the imposition or enforcement of the automatic stay of section 362(a), the Prepetition

Secured Lender shall receive the following adequate protection (collectively referred to as the

"***Prepetition Secured Lender's Adequate Protection***"):

     (a)    Adequate Protection Replacement Liens. Solely to the extent of any

aggregate postpetition Diminution in Value of the prepetition interests of the Prepetition Secured

Lender in the Prepetition Collateral, the Prepetition Secured Lender is hereby granted, subject to

17

the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, replacement liens upon all of the DIP Collateral, including, solely upon entry of the Final Order, any Avoidance Actions Proceeds (such adequate protection replacement liens, the "*Adequate Protection Replacement Liens*"), which Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, and the payment of the Carve-Out, and shall rank in the same relative priority and right as the Prepetition Liens do with respect to the Prepetition Collateral, in each case, to the extent expressly provided in the DIP Loan Documents and this Interim Order.

(b)     Adequate Protection Super-Priority Claims.   Solely to the extent of Diminution in Value, the Prepetition Secured Lender is hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "*Adequate Protection Super-Priority Claims*"), except with respect to Avoidance Actions, pursuant to section 507(b) of the Bankruptcy Code, junior only to the DIP Super-Priority Claims and the Carve-Out, to the extent provided herein and in the DIP Loan Documents and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition Secured Lender shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Super-Priority Claims unless and until all DIP Obligations have been paid in full in cash ("*Paid in Full*" or "*Payment in Full*"). Subject to the relative priorities set forth above, the Adequate Protection Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(c)     Interest and Professional Fees.   As further adequate protection, and without limiting any rights of the Prepetition Secured Lender under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for

18

obtaining the consent of the Prepetition Secured Lender to the entry of this Interim Order, the Debtors shall (i) pay or reimburse currently the Prepetition Secured Lender for any and all of its accrued and past-due fees, costs, expenses and charges to the extent payable under the Prepetition Loan Documents, (ii) on the last day of each calendar month commencing after the Petition Date pay to the Prepetition Secured Lender in arrears the interest accruing under the Prepetition Discretionary Financing Agreement subject to the reapplication to principal if, and to the extent of, a final and nonappealable order is entered determining that the Prepetition Obligations were undersecured as of the Petition Date and (iii) pay currently all reasonable and documented fees, costs and expenses of the attorneys and advisors of the Prepetition Secured Lender, in the case of each of sub-clauses (i), (ii) and (iii) above, all whether accrued prepetition or postpetition and without further notice, motion or application to, order of, or hearing before, this Court.

      (d)    <u>Notice of Professional Fees</u>. None of the fees, costs and expenses incurred by professionals engaged by the DIP Lender or the Prepetition Secured Lender shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; <u>provided</u>, that such professionals shall submit copies of their respective professional fee invoices to the Debtors, the U.S. Trustee and counsel for the Committee (and any subsequent trustee of the Debtors' estates). Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Committee (and any subsequent trustee of the

19

Debtors' estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by such professionals; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the DIP Lender and the Debtors no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the specific basis for the objection. Any hearing on an objection to payment of any fees, costs and expenses set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection.

  (e) Right to Seek Additional Adequate Protection. The Prepetition Secured Lender may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under this Interim Order and the DIP Loan Documents.

  (f) Consent to Priming and Adequate Protection. The Prepetition Secured Lender consents to the Prepetition Secured Lender's Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition Secured Lender to the priming of their Prepetition Liens and the sufficiency of the Prepetition Secured Lender's Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order.

  5. **Automatic Postpetition Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may

otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. To the extent that the Prepetition Secured Lender is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan Document, the DIP Lender shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lender in accordance with the DIP Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition Secured Lender.

6.      **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors in all circumstances. The Debtors' Stipulations shall be binding upon each other party in interest, including any Committee, unless (i) such Committee or any other party in interest other than the Debtors obtains the authority to commence and commences, or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Cases commences on or before 60 days after entry of the Final Order (such time period shall be referred to as the *"Challenge Period,"* and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the *"Challenge Period Termination Date"*), (x) a contested matter or adversary proceeding challenging or otherwise objecting to the

21

admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (y) a contested matter or adversary proceeding against the Prepetition Secured Lender in connection with or related to the Prepetition Obligations, or the actions or inactions of any of the Prepetition Secured Lender arising out of or related to the Prepetition Obligations, or otherwise, including, without limitation, any claim against the Prepetition Secured Lender in the nature of a "lender liability" causes of action, setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Secured Lender) (the objections, challenges, actions and claims referenced in clauses (x) and (y), collectively, the "*Claims and Defenses*") and (ii) this Court rules in favor of the plaintiff in any such timely and properly commenced contested matter or adversary proceeding.  If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee.  The Challenge Period in respect of the Prepetition Secured Credit Facility may be extended by written agreement of the Prepetition Secured Lender in its sole discretion.  Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against the Prepetition Secured Lender or the DIP Lender.

7.    **Carve-Out**.  Subject to the terms and conditions contained in this paragraph 7, each of the DIP Liens, DIP Super-Priority Claims, Prepetition Liens, Adequate Protection Replacement Liens and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

CH\1147746.7 USA Dry Van -- Interim DIP Order

(a)     For purposes of this Interim Order, *"Carve-Out"* means (i) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. §1930(a); (ii) all reasonable unpaid fees, costs and disbursements of professionals retained by the Debtors in these Cases (collectively, the *"Debtors' Professionals"*) that are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors, in an aggregate amount not to exceed $150,000 (which amount may be modified in any Final Order)(the *"Debtors' Professionals Carve-Out Cap"*); (iii) all reasonable unpaid fees, costs and disbursements of professionals retained by the Committee in these Cases (collectively, the *"Committee's Professionals"*) and all reasonable unpaid expenses of the members of any Committee (*"Committee Members"*) that are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $10,000 (which amount may be modified in any Final Order) (the *"Committee Carve-Out Cap"* and together with the Debtors' Professionals Carve-Out Cap, the *"Carve-Out Cap"*) (clauses (i), (ii) and (iii), collectively, the *"Carve-Out"*).

(b)     Any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, to such Professionals or Committee Members shall (i) not be paid from the proceeds of any DIP Loan, DIP Collateral or Prepetition Collateral until such time as all retainers, if any, held by such Professionals or Committee Members have been reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses

23

described in clauses (ii) and (iii) of the definition of Carve-Out, reduce the Carve-Out Cap on a dollar-for-dollar basis. Neither the existence nor the funding of the Carve-Out shall impair (y) the Debtors' rights to seek recovery of the fees and expenses of the Debtors' Professionals or the Committee Professionals or other estate professionals in these Cases from parties (other than the DIP Lender and the Prepetition Secured Lender) pursuant to section 506(c) of the Bankruptcy Code or otherwise or (z) the DIP Lender's DIP Liens on the Debtors' rights under section 506(c) of the Bankruptcy Code.

(c) Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of the DIP Lender or the Prepetition Secured Lender to object to the allowance and payment of such fees and expenses.

8. **Waiver of Section 506(c) Claims.** Subject to the entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Lender, the Prepetition Secured Lender, the DIP Collateral, and the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender or the Prepetition Secured Lender, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Lender and the Prepetition Secured Lender.

9.     **After-Acquired Property**. Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date including, without limitation, in respect of the Prepetition Secured Credit Facility, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date that is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

10.     **Protection of DIP Lender's Rights**.

(a)     Unless the DIP Lender shall have provided its prior written consent or all DIP Obligations have been Paid in Full (or will be Paid in Full upon entry of a final, non-appealable order approving indebtedness described in clause (ii) of subsection (b) below), there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Interim Order to the DIP Lender; or (ii) the use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "*Cash Collateral*"), including, without limitation, Cash Collateral in which the Prepetition Secured Lender and/or the DIP Lender has a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise, for any purpose other than to Pay in Full the DIP Obligations or the

25

Prepetition Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts in the ordinary course of business to the extent and as required by customary and reasonable commercial practices, (ii) reasonably cooperate, consult with, and provide to the DIP Lender all such information as required or allowed under the DIP Loan Documents or the provisions of this Interim Order, (iii) permit representatives of the DIP Lender such rights to visit and inspect any of the Debtors' respective properties, Collateral and DIP Collateral, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants, and (iv) permit the DIP Lender and its representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

11.    **Cash Collection; Application of Proceeds of Collateral.**

(a)    From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in such bank accounts as consented to and approved by the Prepetition Secured Lender (or in such other accounts as are designated by DIP Lender from time to time).

26

(b)  As a condition to the entry into the DIP Loan Documents and the extension of credit under the DIP Facility, each Debtor has agreed that proceeds of DIP Collateral, Prepetition Collateral, any amounts held on account of the DIP Collateral or Prepetition Collateral, all Cash Collateral and all payments and collections received by the Debtors shall be applied as follows: (i) With respect to all proceeds of Prepetition Collateral: (x) *first*, to permanently reduce the Prepetition Obligations in accordance with the Prepetition Loan Documents, subject to paragraph 6, above, until indefeasibly Paid in Full; (y) *second*, to reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents and this Interim Order until indefeasibly Paid in Full, and (z) *third*, to the estates.  (ii) With respect to all proceeds of DIP Collateral: (x) *first*, to reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents and this Interim Order until indefeasibly Paid in Full, (y) *second*, to permanently reduce the Prepetition Obligations in accordance with the Prepetition Loan Documents, subject to paragraph 6, above, until indefeasibly Paid in Full, and (z) *third*, to the estates.  In the event that there is ambiguity as to whether particular proceeds are proceeds of Prepetition Collateral or DIP Collateral, such proceeds shall be deemed to be proceeds of Prepetition Collateral and applied accordingly in accordance with the provisions of this paragraph.

12.    **Disposition of DIP Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside of the ordinary course of business without the prior written consent of the requisite DIP Lender.

13.    **Rights and Remedies Upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Lender is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Lender to exercise the following remedies immediately upon the occurrence and during

27

the continuance of an Event of Default: (i) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations (any such declaration to be made to the Debtors, the respective lead counsel to any Committee and the United States Trustee and to be referred to herein as a *"Termination Declaration"* and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the *"Termination Declaration Date"*); (ii) declare the principal amount then outstanding of, and the accrued interest on, the DIP Obligations and all other amounts payable by the Debtors under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall be immediately due and payable without presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by the Debtors; (iii) reduce any claim to judgment; (iv) take any other action permitted by law; and/or (v) take any action permitted to be taken during or following the existence of an Event of Default by the Prepetition Loan Documents or by the DIP Loan Documents.

(b)    Five (5) Business Days following a Termination Declaration Date, the DIP Lender shall have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect Accounts and apply the proceeds thereof to the DIP Obligations (or, with respect to Prepetition Collateral, to the Prepetition Obligations), occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral or otherwise exercise remedies against the DIP Collateral permitted by applicable nonbankruptcy law. During the five Business Day period after a Termination Declaration Date, the Debtors and any Committee shall be entitled to an emergency hearing before the Court for the sole purpose of contesting whether an Event of Default has occurred and section 105 of the Bankruptcy Code may not be invoked by the Debtor

in an effort to restrict or preclude the DIP Lender from exercising any rights or remedies set forth in this Interim Order or the DIP Loan Documents.   Unless during such period the Court determines that an Event of Default has not occurred and/or is not continuing, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of such five Business Day period, without further notice or order.

(c)     All proceeds realized in connection with the exercise of the rights and remedies of the DIP Lender shall be turned over to the DIP Lender for application to the DIP Obligations (and, with respect to proceeds of Prepetition Collateral, for application to the Prepetition Obligations) and in accordance with the provisions of the DIP Loan Documents (and, with respect to the proceeds of Prepetition Collateral, in accordance with the Prepetition Loan Documents) until Payment in Full of the DIP Obligations (and, with respect to proceeds of Prepetition Collateral, until Payment in Full of the Prepetition Obligations); provided, that in the event of the liquidation of the Debtors' estates after an Event of Default and the termination of the DIP Facility, the unused amount of the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by DIP Lender prior to the distribution of any such Cash Collateral to any other parties in interest.

(d)     Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Lender contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP

Loan Documents has occurred and is continuing, the DIP Lender (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Lender (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral or DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph 13(d) without interference from lienholders or licensors thereunder, subject to such lienholders or licensors rights under applicable law, provided, however, that the DIP Lender, on behalf of the DIP Lender, shall pay only rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Lender and that are payable during the period of such occupancy or use by such DIP Lender calculated on a *per diem* basis. Nothing herein shall require the Debtors or the DIP Lender to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Lender in this paragraph 13(d).

(e)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Lender and the DIP Lender under the DIP Loan Documents, the DIP Facility and this Interim Order, (ii) authorize the DIP Lender and the Prepetition Secured Lender to retain and apply payments hereunder,

(iii) authorize the DIP Lender to exercise its discretion at any time to loan or not to loan in the DIP Lender's sole discretion under the terms of the DIP Loan Documents, regardless of whether an Event of Default has or has not occurred, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

14.     **Preservation of Rights Granted under the Interim Order**.

(a)     No Non-Consensual Modification or Extension of Interim Order.  Unless all DIP Obligations shall have been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default, if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Interim Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)     Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections and the Prepetition Secured Lender's Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been Paid in Full and all Prepetition Secured Lender's Adequate Protection have been paid in full in cash or otherwise satisfied in full (and that all DIP Protections and the Prepetition Secured Lender's Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Lender's Adequate Protection.

31

(c)     <u>Modification of Interim Order</u>.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this Court or any other court, the DIP Lender shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections and the Prepetition Secured Lender's Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Secured Lender, as the case may be, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Prepetition Secured Lender's Adequate Protection.

15.     **Other Rights and Obligations**.

(a)     <u>Expenses</u>.  The Debtors shall pay all reasonable expenses incurred by the DIP Lender (including, without limitation, the reasonable fees and disbursements of all counsel for the DIP Lender and any internal or third-party appraisers, consultants and auditors advising any DIP Lender) in connection with the preparation, execution, delivery and administration of the DIP Loan Documents, this Interim Order, any Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)  <u>Binding Effect</u>.  Subject to paragraph 6 above, the provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Lender, the Prepetition Secured Lender, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; <u>provided, however,</u> that the DIP Lender and the Prepetition Secured Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c)  <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Financing Agreement or otherwise) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Lender and the Prepetition Secured Lender shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

CH\1147746.7 USA Dry Van -- Interim DIP Order

(d)   <u>No Marshaling</u>.   Neither the DIP Lender nor the Prepetition Secured Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(e)   <u>Inconsistency</u>.   In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(f)   <u>Enforceability</u>.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(g)   <u>Headings</u>.   Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

16.   **Final Hearing**.

(a)   The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for [ March 1 ], 2010, at [ 3:00 p.m.] (prevailing Central time) at the United States Bankruptcy Court for the Southern District of Texas.

(b)   <u>Final Hearing Notice</u>.   The Debtors shall promptly serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "***Final Hearing***

*Notice*") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than ____2/23____ @ 5:00 PM, 2010, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, Langley & Banack, 745 East Mulberry, Suite 900, San Antonio, TX 78212, Attn: R. Glen Ayers, gayers@langleybanack.com; (b) counsel for the DIP Lender, Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606, Attn: Douglas Bacon, douglas.bacon@lw.com and Stephen Tetro, stephen.tetro@lw.com; (c) co-counsel for the DIP Lender, Jordan, Hyden, Womble, Culbreth & Holzer PC, 500 North Shoreline Blvd., Suite 900, Corpus Christi, TX 78471, Attn: Shelby A. Jordan, sjordan@jhwclaw.com; (d) counsel to any Committee; and (e) the Office of the United States Trustee for the Southern District of Texas.

17.    **Retention of Jurisdiction**. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: February 3, 2010

_____
UNITED STATES BANKRUPTCY JUDGE

CH\1147746.7 USA Dry Van – Interim DIP Order